## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

DENISE GEORGETTE FLORES

Plaintiff,

v.

WELLS FARGO BANK, N.A.

Defendant.

CASE NO.

## CLASS ACTION COMPLAINT
## JURY DEMANDED

Plaintiff, Denise Georgette Flores n/k/a Denise Georgette Flores-Prado, on behalf of herself and all other similarly situated residents of the United States of America alleges this Class Action Complaint against Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant"). Plaintiff's allegations are based on personal information as to those allegations about herself and upon information and belief based upon facts discovered by Counsel, on all other matters. On behalf of herself and the Class (defined below), Plaintiff alleges as follows:

### PARTIES

1.      Plaintiff is a resident of Tallahassee, Florida who entered into a mortgage contract and promissory note with Capital City Bank in July 2011 for her home located at 3345 Sawtooth Drive, Tallahassee, Florida. Servicing of the mortgage was assigned to the Defendant, Wells Fargo.

2.      Defendant, Wells Fargo is a National Banking Association, organized

and operating under the National Banking Act located in Sioux Falls, South Dakota with its principal place of business in San Francisco, California.

3.    Defendant is subject to the supervision of the Comptroller of the Currency ("OCC") of the United States Department of the Treasury and is deemed a citizen of South Dakota pursuant to 28 U.S.C. § 1348. Wells Fargo Bank, N.A. provides Wells Fargo & Company personal and commercial banking services and is Wells Fargo & Company's wholly owned, principal operating subsidiary. Wells Fargo & Company is incorporated in Delaware with its principal place of business and corporate headquarters in San Francisco, California.

<strong>JURISDICTION AND VENUE</strong>

4.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there are 100 or more Class Members and the aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest and costs. Additionally, at least one Class member is a citizen of a state different from the corporate domicile of the Defendant.

5.    This case is properly maintainable as a Class action pursuant to Rule 23(a) of the Federal Rules of Civil Procedure in that the Class, which includes an unknown number of persons but certainly more than 100, is so numerous that joinder of all Members is impractical, there are substantial questions of law and fact common to the Class, and this case is properly maintainable as a Class action

pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

    (a)    questions of law and fact enumerated below, which are all common of the Class, predominate over any questions of law or fact affecting only individual Members of the Class;

    (b)    a class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

    (c)    the relief sought in this Class action will effectively and efficiently provide relief to all Members of the Class; and

    (d)    there are no unusual difficulties foreseen in the management of this class action.

6.    At all relevant times, Wells Fargo conducted substantial business in this district, and many of the acts and transactions by Wells Fargo supporting the Plaintiff's claims occurred in this District.

7.    The Court has personal jurisdiction over Wells Fargo, which has at least minimum contacts with the State of Florida as the bank conducts business here and has availed itself of the laws of Florida.

8.    This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9.    Venue in the United States District Court for the Northern District of Florida is proper because Wells Fargo transacts business within this District and a substantial part of the events giving rise to the claims at issue in this Complaint occurred in this District.

## FACTUAL ALLEGATIONS

10.    Wells Fargo is one of the nation's largest originators and servicers of residential home mortgage loans and at all times relevant hereto serviced the home mortgage loans of the Plaintiff and Class.

11.    As a mortgage servicer, Wells Fargo derives income in a number of ways including (a) payments based on a percentage of each borrower's principal balance pool, (b) float interest, (c) late fees, (d) foreclosure fees, (e) property inspection fees, and (f) broker opinion fees. At all times relevant hereto, Wells Fargo has serviced residential home mortgage loans nationwide.

12.    In late 2008 and early 2009, the United States Government provided numerous banking institutions with billions of dollars pursuant to the Troubled Asset Relief Program ("TARP"). This massive bailout allowed the continued existence of several banking institutions including Wells Fargo.

13.    Because the stated purpose of the financial bailout was to help the American people and homeowners in particular, in 2009, the Secretary of the Treasury implemented the Home Affordable Modification Program ("HAMP"). HAMP was implemented in March 2009 to assist the millions of American homeowners facing foreclosure.

14.    Upon information and belief, Wells Fargo received around $25 billion dollars pursuant to TARP. In return, Defendant agreed to participate in HAMP and

be obligated to comply with HAMP guidelines and other Department of Treasury directives.

15.    In administering HAMP, among other things, Wells Fargo was required to review defaulted mortgage loans for modification eligibility prior to proceeding with any foreclosure. Wells Fargo was required to offer modifications to all eligible defaulted borrowers prior to initiating any foreclosure. HAMP guidelines required that Wells Fargo undertake a number of specific and non-discretionary steps to determine a borrower's eligibility for modification or other relief. If the borrower met the requirements and completed a trial period plan, Wells Fargo was required to permanently modify the loan. Wells Fargo received additional incentive payments for each completed mortgage modification.

16.    On August 3, 2018, as required by the Securities Exchange Commission ("SEC"),

Wells Fargo Bank, N.A.'s parent company Wells Fargo & Company issued its Quarterly Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934. In its report, Wells Fargo & Company revealed that it identified an automated calculation error that caused it to wrongfully deny loan modifications and resulted in hundreds of foreclosures of residential mortgage loans in default between April 13, 2010, and October 20, 2015:

> An internal review of the Company's use of a mortgage loan modification underwriting tool identified a calculation error that

affected certain accounts that were in the foreclosure process between April 13, 2010 and October 20, 2015, when the error was corrected. This error in the modification tool caused an automated miscalculation of attorneys' fees that were included for purposes of determining whether a customer qualified for a mortgage loan modification pursuant to the requirements of government-sponsored enterprises (such as Fannie Mae and Freddie Mac) and the U.S. Department of Treasury's Home Affordable Modification Program (HAMP). Customers were not actually charged the incorrect attorneys' fees. As a result of this error, approximately 625 customers were incorrectly denied a loan modification or were not offered a modification in cases where they would have otherwise qualified. In approximately 400 of these instances, after the loan modification was denied or the customer was deemed ineligible to be offered a loan modification, a foreclosure was completed.

https://www.sec.gov/Archives/edgar/data/72971/000007297118000408/wfc-06302018x10q.htm (emphasis added).

17.    Subsequent SEC reports by Wells Fargo & Company identified hundreds more customers whose homes were foreclosed after mortgage modification was denied due to an automation error causing miscalculation of fees which were used to determine mortgage modification eligibility between March 2010 and April 30, 2018. Upon information and belief, thousands of Wells Fargo mortgage servicing customers' homes were foreclosed due to these automation errors by Wells Fargo.

**Plaintiff Denise Georgette Flores**

18.    Plaintiff entered a mortgage contract and promissory note in July 2011 for her home located at 3345 Sawtooth Drive, Tallahassee, Florida with Capital

City Bank. The amount owed on the promissory note was $62,377.00. Servicing of the mortgage was assigned to the Defendant, Wells Fargo.

19. After experiencing financial hardship along with millions of other Americans, Plaintiff requested a mortgage modification from Wells Fargo. Wells Fargo initially approved a modification for a trial payment period under HAMP.

20. When Plaintiff continued to experience financial hardship, she requested a permanent modification, but Wells Fargo refused, and her request was denied.

21. On February 12, 2015, Wells Fargo filed a Verified Complaint to Foreclose Plaintiff's mortgage in the Circuit Court of Leon County, Florida.

22. On August 13, 2025, Wells Fargo obtained a Final Judgment for Foreclosure from the Circuit Court of Leon County, Florida. On August 14, 2015, Wells Fargo published a notice of foreclosure sale to be held on October 2, 2015.

23. On September 30, 2015, Wells Fargo filed a Motion to Cancel the Foreclosure Sale stating Plaintiff "is requesting a cancelation of the sale to allow it additional time to further evaluate this case for foreclosure avoidance opportunities." However, on October 1, 2015, the Circuit Court of Leon County, Florida denied Wells Fargo's motion. On October 2, 2015, the Plaintiff's home was sold to a bidder for $51,000.00.

24. Unknown to Plaintiff at the time, she was a victim of Wells Fargo's

concealed "automation error," which directly resulted in the denial of her request for mortgage loan modification and the foreclosure of her home.

25.    Due to Wells Fargo's acts and omissions, Plaintiff lost her home and the opportunity to build additional equity in her home. Upon information and belief, the home was sold in 2018 for $98,500.00 and the current market value is at least $180,000.00 as of the date of filing this Complaint.

26.    The Plaintiff has suffered other damages, including but not limited to costs associated with moving from her home and Wells Fargo wrongfully reporting inaccurate information to credit reporting agencies regarding the Plaintiff's residential mortgage loan when in reality, she was wrongfully prohibited from modifying her mortgage payments.

27.    Wells Fargo's "automation error," which resulted in the denial of the Plaintiff's request for mortgage loan modification and the foreclosure of her home, caused other significant damages.

28.    Years later, Wells Fargo's "automation errors" came to light, and following intensive governmental investigation and hearings, on May 10, 2024, Wells Fargo sent the Plaintiff a check for $530.50 and enclosed a letter stating:

Dear DENISE GEORGETTE FLORES:

We identified that an error may have occurred related to your approved and finalized loan modification. We apologize for any inconvenience this may have caused and we're enclosing a check for $530.50. Please cash or deposit the check in a branch, at an ATM, or using mobile deposit at your earliest convenience.

The check may include the following:

- An amount for the differences in interest, principal balance, fees, or a combination of these amounts.
- An amount for the time these funds were unavailable.

This payment is in addition to any amount we may have previously sent. We apologize for any inconvenience this may have caused.

29.     Further, Wells Fargo invited the Plaintiff to initiate mediation of her obviously valid claims against this bank. The letter goes on to state:

**Mediation**
If you do not feel that we have made things right, you have the option of participating in mediation. Mediation is offered when customers indicate they may have incurred additional expenses as a result of actions by Wells Fargo which have not been reimbursed. Mediation is a nonbinding dispute resolution process that is facilitated by an independent mediation service provider at no cost to you. Wells Fargo will pay all costs associated with the mediation. You are not waiving any legal claims by participating in the process. You do not waive your right or limit your ability to choose mediation by cashing the enclosed check. If you want to discuss a mediation option, please call us at the number listed below.

30.     Just a month later, on June 13, 2024, Wells Fargo sent the Plaintiff another (unsolicited) check for $5,355.93, along with a similar letter.

31.     Plaintiff's experience is representative of the Class members she seeks to represent. As a result, Wells Fargo is liable to the Plaintiff and the Class for the loss of their homes, the opportunity to build additional equity in their homes, and other significant economic and non-economic damages.

32.   Defendant's reporting of a negative event related to a mortgage against the Plaintiff and Class members had a serious and detrimental effect on their credit and creditworthiness. Defendant's reporting of a negative event related to a mortgage against Plaintiff and Class members reduced their credit scores substantially, causing additional injuries.

## CLASS ALLEGATIONS

**A.    Class Definitions**

33.   Plaintiff brings this action against Wells Fargo pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of herself and all other persons similarly situated. Plaintiff seeks to represent the following "Class":

> All persons within the United States who applied to Wells Fargo Bank, N.A. for a mortgage loan modification, were denied a modification by Wells Fargo due to an automation error, and lost their home to foreclosure by Wells Fargo.

34.   Excluded from the Class are the assigned Judge, the Judge's staff and family, and Wells Fargo employees.

35.   Plaintiff reserves the right to modify or amend the definition(s) of the proposed Class before the Court determines whether certification is appropriate.

36.   Wells Fargo's "automation error" caused Plaintiff and the respective Class Members the damages in the same or substantially the same manner.

**B.    Numerosity**

37.   The proposed Class are so numerous that joinder of all Members would

be impracticable. The individual Class Members are ascertainable, as the names and addresses of all Class Members can be identified in the business records maintained by Wells Fargo. The precise number of Class Members for the Class Members are at least in the hundreds if not thousands and can only be obtained through discovery, but the numbers are clearly more than can be consolidated in one complaint such that it would be impractical for each member to bring suit individually. Plaintiff does not anticipate any difficulties in the management of the action as a Class action.

**C.    Commonality**

38.    There are questions of law and fact that are common to Plaintiff and Class Members' claims. These common questions predominate over any questions that go particularly to any individual member of the Class. Among such common questions of law and fact are the following:

a.    Whether Wells Fargo was negligent in denying the requests for mortgage modifications by the Plaintiff and the Class due to the automation errors;

b.    Whether a contract, actual or implied, existed between Wells Fargo and the Class Members and whether Wells Fargo breached the contract by refusing to modify their mortgage loans;

c.    Whether the Plaintiff and the Class Members were homeowners who lost their home to foreclosure due to Wells Fargo's admitted "automation

errors" as admitted by the Defendant's parent company, Wells Fargo & Company in SEC filings;

d.    Whether Wells Fargo was negligent by applying mortgage payments made by the Plaintiff and the Class accurately to amounts for incorrect and illegal fees charged to their mortgage accounts:

f.    Whether Wells Fargo intentionally and unjustifiably interfered with Plaintiff and the Classes' rights under the mortgage contracts by requiring borrowers to pay more fees or other fees or interest than they should have; and

g.    Whether Wells Fargo received any benefit, profited, and was unjustly enriched by charging the Plaintiff and the Class Members improper or incorrect fees, interest or other fees.

**D.    Typicality**

39.    Plaintiff is a Member of the Class she seeks to represent. Plaintiff's claims are typical of the respective Class Members' claims because of the admitted similarity, uniformity, and common errors as similarly reported to the SEC by the Defendant's parent company. Each Class Member has sustained and will continue to sustain damages in the same manner as Plaintiff as a result of Wells Fargo's wrongful conduct.

**E.    Adequacy of Representation**

40.    Plaintiff is an adequate representative of the Class she seeks to represent and will fairly and adequately protect the interests of the Class. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel, experienced in litigation of this nature, to represent them. There is no hostility between Plaintiff and the unnamed Class Members. Plaintiff anticipates no difficulty in the management of this litigation as a Class action.

41.    To prosecute this case, Plaintiff has chosen the undersigned law firms, which are very experienced in Class action litigation and have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

**F.    Requirements of Fed. R. Civ. P. 23(b)(3)**

42.    The questions of law or fact common to Plaintiff and each Class Member's claims predominate over any questions of law or fact affecting only individual Members of the Class. All claims by Plaintiff and the unnamed Class Members are based on Wells Fargo's admitted "automation error."

43.    Common issues predominate when, as here, liability can be determined on a Class-wide basis, even if there will be some individualized damage determinations.

44.    As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the Class as

is the case at bar, common questions will be held to predominate over individual questions.

## G.    Superiority

45.    A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

(a) Joinder of all Class Members would create extreme hardship and inconvenience for the affected customers as they reside all across the states;

(b) Individual claims by Class Members are impractical because the costs to pursue individual claims may exceed the value of what any one Class member has at stake.  As a result, individual Class Members may have no interest in prosecuting and controlling separate actions;

(c) There are no known individual Class Members who are interested in individually controlling the prosecution of separate actions;

(d) The interests of justice will be well served by resolving the common disputes of potential Class Members in one forum;

(e) Individual suits would not be cost-effective or economically maintainable as individual actions; and

(f) The action is manageable as a class action.

## H.    Requirements of Fed. R. Civ. P. 23(b)(1) & (2)

46.    Prosecuting separate actions by or against individual Class Members

would create

a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for the party opposing the Class.

47.    Wells Fargo has acted or failed to act in a manner generally applicable to the entirety of the Class, thereby making an appropriate judgment or corresponding declaratory relief with respect to the Class as a whole.

## TOLLING ALLEGATIONS

48.    The causes of actions asserted by the Plaintiff, individually and on behalf of the Class were tolled and did not accrue until May 10, 2024, when Wells Fargo sent its first letter to the Plaintiff indicating "an error may have occurred." Neither the Plaintiff nor any Class Member could have discovered the "error" now vaguely disclosed by Well Fargo.

49.    The information regarding the "automation errors" that resulted in the wrongful denial of mortgage modifications and subsequent foreclosures was at all times under the exclusive control of Wells Fargo.

50.    Neither the Plaintiff nor the Class Members received any notice of the "automation errors" that resulted in the foreclosure of their home until on or around May 10, 2024.    Therefore, the Plaintiff and Class Members could not have discovered the facts supporting their causes of action until recently being notified.

51.     Defendant successfully concealed from the public and from the Plaintiff and the Class the material fact that an "automation errors" had occurred. Defendant knew or should have known this fact at the time the error occurred, or shortly thereafter, and in fact did know about the error as early as 2013.

52.     Defendant had an affirmative duty to disclose this fact to its customers, including the Plaintiff and the Class, and had they known of the automation errors, they would have taken affirmative steps to remedy the issue. Such steps would have avoided the injuries suffered, including the foreclosure of the Plaintiff and the Class's properties.

**COUNT I**
**BREACH OF CONTRACT AND BREACH OF IMPLIED**
**COVENANT OF GOOD FAITH AND FAIR DEALING**
*(Plaintiff and Class)*

53.     Plaintiff, on behalf of herself and the Class Members, re-alleges and incorporates the allegations in paragraphs 1-52 above and further alleges:

54.     Wells Fargo originated or was assigned the home mortgage loans of the Plaintiff and Class Members.

55.     Plaintiff and all similarly situated Class Members have mortgages that are owned and/or serviced by Wells Fargo.

56.     Plaintiff and Class Members' mortgages are written on uniform mortgage forms and contain the same or substantially similar provisions.

57.     Plaintiff and the Class Members' notes are written on uniform mortgage

forms and contain the same or substantially similar provisions.

58.    In accordance with HAMP, Plaintiff and each member of the Class provided documents, information, and certifications in compliance with the security instruments for Wells Fargo to review for their eligibility for a loan modification. Defendant is in possession of these documents.

59.    When Wells Fargo received the documents, Wells Fargo was contractually obligated, whether expressly or by implication under the terms of the mortgages and notes, to consider the Plaintiff and Class Members for a loan modification and to provide that loan modification if they qualified.

60.    Wells Fargo breached its contractual duty when it denied the modifications due to an admitted "automation errors."

61.    Further, upon information and belief, Wells Fargo applied incorrect and illegal fees to the mortgage loan accounts of Plaintiff and Class due to an "automation errors."

62.    The application of incorrect and illegal fees and collection of those fees by the Defendant from mortgage payments and/or mortgage modification trail payments made under HAMP constitutes a breach of the mortgages and notes by Wells Fargo.

63.    Further, a covenant of good faith and fair dealing is implied in every contract and imposes upon each party a duty of good faith and fair dealing in its

performance. Common law calls for substantial compliance with the spirit, not just the letter, of a contract in its performance.

64.    Wells Fargo breached its duty of good faith and fair dealing when it recognized the "automation errors" in 2018, but waited until 2024 after the Plaintiff and Class Member's homes were wrongfully taken from them to apologize and make a wholly inadequate, vague and misleading attempt at restitution.

65.    As a direct, proximate, and legal result of the aforementioned breaches of contract and implied covenant of good faith and fair dealing, Plaintiff and the Class have suffered damages as described in this Complaint.

## COUNT II
## NEGLIGENCE
### *(Plaintiff and Class)*

66.    Plaintiff, on behalf of herself and the Class Members, re-alleges and incorporates in paragraphs 1-65 above of this Complaint and further alleges:

67.    In administering HAMP, among other things, Wells Fargo was required to review defaulted mortgage loans for modification eligibility prior to proceeding with any foreclosure. Defendant was required to offer to all defaulted borrowers, modifications for which they are eligible prior to conducting any foreclosure.

68.    Wells Fargo owed the Plaintiff and the Class a duty to accurately and fairly review the Plaintiff and Class Member's mortgage modification requests.

69.    Wells Fargo breached that duty of care to the Plaintiff and the Class

Members when it admittedly committed an "automation error" which resulted in the foreclosure of their homes.

70.    As a direct, proximate, and legal result of the aforementioned breaches of the covenant of good faith and fair dealing, Plaintiff and the Class have suffered damages as described in this Complaint.

## COUNT III
## UNJUST ENRICHMENT

71.    Plaintiff, on behalf of herself and the Class Members, re-alleges and incorporates in paragraphs 1-70 above of this Complaint and further alleges:

72.    This count is pled in the alternative to the extent there is no contract between Wells Fargo and Plaintiff or the Class Members.

73.    Upon information and belief, Wells Fargo applied incorrect and illegal fees to the mortgage loan accounts of Plaintiff and Class due to an "automation errors" and those errors led to Wells Fargo applying mortgage payments and mortgage modification trial payments to the collection of fees it earned as the servicer of the mortgages to its own benefit.

74.    When Wells Fargo foreclosed on the Plaintiff and Class Member's properties, it kept those fees it would not have collected but for the wrongful foreclosure due to its own "automation error" that resulted in the denial of modifications.

75.    As a result, Plaintiff and Class Members have conferred a benefit on

Wells Fargo.

76.    Wells Fargo had knowledge of this benefit and voluntarily accepted and retained the benefit conferred on it.

77.    Wells Fargo will be unjustly enriched if it is allowed to retain the aforementioned fees it collected.  Therefore, the Plaintiff and each Class Member are entitled to recover the amount by which Wells Fargo was unjustly enriched at his or her expense.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all similarly situated individuals, demands judgment against the Defendant as follows:

1.    Declaring this action to be a proper Class action maintainable pursuant to Federal Rules of Civil Procedure 23(a) and Rule 23(b)(1) and (2), or Rule 23(b)(3) and declaring Plaintiff and her counsel to be adequate representatives of the Class;

2.    Awarding damages sustained by Plaintiff and the Class as a result of Defendant's breaches of the mortgage contracts and the implied covenant of good faith and fair dealing, together with pre-judgment interest;

3.    Declaring that Wells Fargo was negligent in calculating eligibility for mortgage modifications;

4.    Awarding damages sustained by Plaintiff and the Class as a result of Defendant's negligence together with pre-judgment interest;

5.     Finding that Wells Fargo has been unjustly enriched and requiring it to refund all unjust benefits to Plaintiff and the Class, together with pre-judgment interest;

6.     Awarding Plaintiff and the Classes costs and disbursements and reasonable allowances for the fees of Plaintiff and the Class counsel and experts, and reimbursement of litigation expenses; and

7.     Awarding such other and further relief the Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff and the Class request a jury trial for all Counts for which a trial by jury is permitted by law.

September 6, 2024          */s/ Stephen F. Bolton*
Joseph Anthony Zarzaur, Jr. FBN 96806
Stephen F. Bolton, FBN 327859
Zarzaur Law, P.A.
100 Palafox Pace
Pensacola, FL 32502
Phone: (850) 444-9299
Fax: (850) 696-1060
Email: joe@zarzauralaw.com
Email: steve@zarzaurlaw.com
Email: service@zarzaurlaw.com

Joseph "Jay" H. Aughtman,
(*pro hac vice* to be filed)
Aughtman Law Firm, LLC
1722 Platt Place

Montgomery, AL 36117
Phone: (334) 215-9873
Fax: (334) 213-5663
Email: jay@aughtmanlaw.com

Aaron C. Hemmings
(*pro hac vice* to be filed)
Hemmings & Stevens, P.L.L.C
5540 McNeely Drive, Suite 202
Raleigh, NC 27612
Phone: (919) 277-0161
Fax: (919) 277-0162
Email:
ahemmings@hemmingsandstevens.com

*Attorneys for Plaintiff and the Putative Class*